Mr. Paul J. Nicoletti Town Attorney for South Palm Beach 317 Tenth Street West Palm Beach, Florida 33401-3317
Dear Mr. Nicoletti:
You have asked for my opinion on substantially the following question:
Is a Florida municipality authorized by Article VIII, section2(b), Florida Constitution, and section 166.021, Florida Statutes, to conduct bingo games?
In sum:
A municipality derives no authority from Article VIII, section2(b), Florida Constitution, and section 166.021, Florida Statutes, to conduct bingo games.
The game of bingo is considered to be a form of lottery.[1] The Florida Constitution generally prohibits lotteries, other than certain pari-mutuel pools,[2] with the exception of lotteries operated by the state.[3] Bingo also constitutes gambling within the scope of Chapter 849, Florida Statutes, which states that "[w]hoever plays or engages in any . . . game of chance, at any place, by any device whatever, for money or other thing of value, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."[4]
The statutes authorize certain nonprofit or veterans organizations to conduct bingo games. These organizations must be engaged in charitable, civic, community, benevolent, religious, or scholastic work, or similar activities, and must have been in existence and active for a period of three years or more.[5] If an organization is not engaged in charitable, nonprofit, or veterans' efforts, it may conduct bingo games so long as all of the proceeds from the games are returned to the players in the form of prizes.[6]
In Florida, broad home rule powers have been conferred on municipalities through the enactment of Chapter 166, Florida Statutes. Chapter 166, the Municipal Home Rule Powers Act, implements the provisions of Section 2, Article VIII, Florida Constitution.[7] Pursuant to section 166.021(1), Florida Statutes, municipalities "have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." A "[m]unicipal purpose" is defined in section166.021(2) to mean "any activity or power which may be exercised by the state or its political subdivisions."
The Florida Supreme Court has stated that an analysis of the exercise of municipal powers requires a two-tiered consideration.[8]
First, was the action undertaken for a municipal purpose? If so, was such action expressly prohibited by the Constitution, general or special law, or charter?
Applying this test, you assert that a municipality's conduct of a bingo game "would benefit the citizens of a municipality by creating a source of recreation to the citizens, and a minor source of economic benefit[9] to the local government[,]"[10] thus satisfying the first part of this test. However, lotteries, including bingo games, are expressly prohibited by the Constitution and Florida Statutes, except for those specifically created exceptions. I cannot say that any of the exceptions authorize a municipality in this state to conduct bingo games.[11]
Thus, it is my opinion that a municipality derives no authority from Article VIII, section 2(b), Florida Constitution, and section166.021, Florida Statutes, to conduct bingo games. Rather, such gambling is prohibited by the constitution and laws of this state.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, s. 849.09, Fla. Stat., describing and prohibiting lotteries. Subsection (3) states that "[t]he provisions of this section do not apply to bingo as provided for in s. 849.0931" which authorizes the playing of bingo under the circumstances set forth therein.
[2] See, Art. X, s. 7, Fla. Const. 
[3] See, Art. X, s. 15, Fla. Const. 
[4] Section 849.08, Fla. Stat.
[5] Section 849.0931(2)(a), Fla. Stat., and see, s.849.0931(1)(c), defining a "[c]haritable, nonprofit, or veterans' organization" to mean "an organization which has qualified for exemption from federal income tax as an exempt organization under the provisions of s. 501(c) of the Internal Revenue Code of 1954 or s. 528 of the Internal Revenue Code of 1986, as amended; which is engaged in charitable, civic, community, benevolent, religious, or scholastic works or other similar activities; and which has been in existence and active for a period of 3 years or more."
[6] Section 849.0931(3), Fla. Stat.
[7] See, City of Miami Beach v. Rocio Corporation,404 So.2d 1066, 1069 (Fla. 3d DCA 1981), pet. for rev. den., 408 So.2d 1092
(Fla. 1981); State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978).
[8] See, City of Boca Raton v. Gidman, 440 So.2d 1277, 1280 (Fla. 1983).
[9] Contra, s. 849.0931, Fla. Stat., which requires that the proceeds of all bingo games either go to the charitable, nonprofit, or veterans' organizations conducting them or to the players in the form of prizes. Thus, it would not appear that such games, were they authorized, would be a revenue generating proposition for local governments.
[10] See, Memorandum from Nicoletti, Block, Duffy, Poncy Kohn, P.A., dated August 9, 1995.
[11] I would note that s. 849.0931(11), Fla. Stat., provides that a municipality may, by appropriate ordinance or resolution, specifically authorize the use of municipal property for conducting games. This does not, however, extend to municipalities the authority to conduct bingo games.